UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| ARNOLDO CHAVEZ and ALMA JASSO CHAVEZ as next friends of A.C., minor child,<br><br>    *Plaintiff*,<br><br>v.<br><br>AMAZON.COM, INC., U2O GLOBAL CO., LTD, U2O USA, LLC, KMK INTERNATIONAL INC.,<br><br>    *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 5:26-cv-00264 |

## COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW, ARNOLDO CHAVEZ and ALMA JASSO CHAVEZ as next friends of A.C., a minor child, ("A.C." or "Plaintiff") and for cause of action would respectfully show unto the Court the following:

### I.   INTRODUCTION

1. This case arises from the severe burn injuries sustained by A.C. when a defective portable smartphone charger ("Subject Device") manufactured, marketed, distributed, and/or sold by Defendants violently combusted in A.C.'s hands.

2. The Subject Device was manufactured defectively in China and introduced and distributed to the U.S. market and A.C. through Amazon.com.

### II.   PARTIES AND SERVICE

3. **Arnoldo Chavez ("Mr. Chavez")** is an individual residing in Laredo, Texas. He can be served by and through his counsel, Nix Patterson, LLP, at 8701 Bee Caves Rd Building 1,

Suite 500, Austin, Texas 78746.

4.      **Alma Jasso Chavez ("Mrs. Chavez")** is an individual residing in Laredo, Texas. She can be served by and through her counsel, Nix Patterson, LLP, at 8701 Bee Caves Rd. Building 1, Suite 500, Austin, Texas 78746.

5.      Defendant **Amazon.com Inc. ("Amazon")** is a foreign for-profit corporation that maintains a principal place of business at 410 Terry Ave. North, Seattle, WA 98109-5210, and may be served with process through its registered agent, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

6.      Amazon is the world's largest online retailer and one of the largest companies on earth. Amazon dominates e-commerce globally. A 2025 study found that its then $1.6 trillion market cap made the company richer than 92% of the world's countries.[1] Its market cap in 2026 exceeds $2 trillion.[2] Amazon is heavily involved in the listing, sale, and distribution of the Subject Device.

7.      Defendant **U2O Global Co., Ltd. ("U2O Global")** is a foreign for-profit corporation that maintains a principal place of business at Huanzhu Road 385, Jimei District Xiamen, Fujian, China, and may be served with process through its registered agent, KMK International Inc., 9151 Fox Fire Dr., Highlands Ranch, Colorado 80129.[3]

---

[1] *How large would tech companies be if they were countries?*, MACKEEPER, https://mackeeper.com/blog/tech-giants-as-countries/ (accessed Feb. 3, 2026).

[2] *Top 10 Largest Companies by Revenue Worldwide*, INVESTOPEDIA, https://www.investopedia.com/articles/active-trading/111115/why-all-worlds-top-10-companies-are-american.asp#:~:text=2.,Markets5678 (accessed Feb. 2, 2026).

[3] U2O Global lists KMK as its U.S. registered agent in FCC filings and related filings, see Exhibit 1 ("KMK International Inc acknowledges their obligation to accept service of process on behalf of U2O Global Co., LTD") and Exhibit 2. However, in these filings, KMK's address is listed as 105 S. 54th Ave. Unit F Denver, CO 80239, which does not appear to be a valid street address.

8. U2O Global is engaged in the business of designing, licensing, manufacturing, testing, advertising, warranting, distributing, supplying, selling, and introducing into the stream of commerce a line of portable smartphone chargers ("Power Banks") sold under the brand name "iWalk," including the Subject Device. iWalk Power Banks have a portable lithium-ion battery to store and transfer power to smartphones without the need for an outlet. Power banks typically transfer power either through a charging cable or by utilizing smartphones' magnetic charging apparatuses. Through Amazon, U2O Global widely sold, marketed, and distributed its iWalk products in Texas and throughout the United States.

9. Defendant **U2O USA, LLC ("U2O USA")** is a foreign limited liability company that maintains a principal place of business at 90 Gordon Dr., Syosset, NY, 11791. U2O USA does not list a registered agent in its New York state filings. Under Fed. R. Civ. P. 4(h) and 4(e)(1), service may be effected by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1). New York Limited Liability Company Law § 303 permits personal service on the New York Secretary of State as an agent of a New York domestic limited liability company. *See* N.Y. Limit. Liab. Co. § 303(a). Service is complete when the New York Secretary of State is served according to this rule. *Id.* The New York Secretary of State may be served at One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231.

10. U2O USA is U2O Global's U.S. branch. Upon information and belief, U2O USA is involved in the U.S. business operations and logistics for U2O Global and assists in the distribution of U2O Global's products to the U.S. market.

11. Defendant **KMK International Inc. ("KMK")** is a foreign for-profit corporation that maintains a principal place of business at 9151 Fox Fire dr., Highlands Ranch, CO 80129, and

may be served with process through its registered agent, Colorado Registered Agents Inc., 1500 N Grant St., STE R, Denver, CO 80203.

12.    Upon information and belief, KMK is involved in the U.S. business operations and logistics for U2O Global and assists in the distribution of U2O Global's products to the U.S. market. U2O Global lists KMK as its U.S. address and affiliate in its product user manual for its MXB008 model Power Bank. KMK also owns the trademark for the "MAG-X" logo (shown below),[4] which is printed on the recalled magnetic Power Banks.[5]



---

[4]  *iWalk*, AMAZON.COM,  https://www.amazon.com/stores/iWALK/page/37B54348-5580-420F-875B-79EA2F11B7F7?lp_context_asin=B0D92118RM&lp_context_query=iwalk+magnetic+power+bank+6000&store_ref=bl_ast_dp_brandLogo_sto&ref_=cm_sw_r_ud_ast_store_EWXPRFGHSWBNNFC9KGCW (accessed Jan. 29, 2026).

[5] *iWALK Magnetic Wireless Power Banks Recalled Due to Fire and Burn Hazards; Manufactured by U2O Global*, UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2025/iWALK-Magnetic-Wireless-Power-Banks-Recalled-Due-to-Fire-and-Burn-Hazards-Manufactured-by-U2O-Global (accessed Jan. 29, 2026).



Recalled iWALK Power Bank Models DBL6000M/DBL6000P (back)

### III.    MISNOMER / ALTER EGO

13.    In the event any parties are misnamed or are not included herein, Plaintiff contends that such was a "misidentification," "misnomer," and/or such parties are "alter egos" of parties named herein.

### IV.    JURISDICTION AND VENUE

14.    This Court has diversity jurisdiction over this lawsuit under 28 U.S.C. § 1332. Plaintiff is a resident of the State of Texas, and Defendants are foreign entities. There is thus complete diversity citizenship between Plaintiff and Defendants. The amount in controversy in this case exceeds $75,000.

15.    This Court has specific personal jurisdiction over Defendants because the defective Power Bank at issue, which was manufactured, marketed, distributed, and/or sold by Defendants,

was directly sold to and purchased by a Texas citizen in Texas. Further, Defendants' defective Power Bank injured Plaintiff in this district of the State of Texas.

16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and 1391(d) because a substantial part of the events giving rise to this claim occurred in this District and because of Defendants' substantial contacts with this District, including their marketing, sale, and/or distribution of Power Banks and other products in this District.

## V.    FACTS

### A.  iWalk Defendants and the Subject Device

17.    The Subject Device was an iWalk Magnetic Wireless Portable Charger, model number DBL6000M/DBL6000P, purchased by A.C. and their family from Amazon.com on February 21, 2024. This model was designed to wirelessly charge iPhones by magnetizing to the back of the phone and utilizing iPhones' built-in MagSafe charging technology to transfer power from the Power Bank's lithium-ion battery. This iWalk Power Bank model is identifiable by its distinctive "Finger Ring" located on the back of the device.



18.    The Subject Device and similar models were defectively designed and manufactured in such a way that their lithium-ion batteries could spontaneously overheat and ignite with use of the product.

19.    The U.S. Consumer Product Safety Commission ("CPSC") issued a recall for multiple models of magnetic iWalk Power Banks including that of the Subject Device. The CPSC alerted consumers and sellers that "[t]he lithium-ion batteries in the recalled power banks can overheat and ignite, posing a risk of serious injury or death from fire and burn hazards to consumers."[6]

20.    U2O Global manufactures iWalk products in the Fujian province in southeastern China and uses Amazon's services to market, sell, and distribute its products in the U.S.

---

[6] *iWALK Magnetic Wireless Power Banks Recalled Due to Fire and Burn Hazards; Manufactured by U2O Global*, UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2025/iWALK-Magnetic-Wireless-Power-Banks-Recalled-Due-to-Fire-and-Burn-Hazards-Manufactured-by-U2O-Global (accessed Jan. 29, 2026).

**Page 7 of 28**

21.    U2O Global, U2O USA, and KMK (together, "iWalk Defendants") are jointly responsible for iWalk business operations in the U.S. U2O USA serves as U2O Global's U.S. branch and, along with KMK, provides leadership and logistical support for the sale and distribution of iWalk products in the U.S. For example, U2O USA occasionally serves as the importer/consignee for iWalk products. KMK and U2O USA both facilitate the distribution of iWalk products into the U.S.

### B. Amazon.com

22.    Amazon provides a digital storefront where the iWalk Defendants can advertise and sell their Chinese products directly to U.S. consumers en masse. iWalk is a prominent seller on Amazon.com. Amazon's product listings show that some iWalk models sell over 5,000 units in a single month. iWalk Defendants publish on their Amazon product pages that the brand reached "Best Seller No. 1 in Amazon's Cell Phone Portable Power Banks category." [7]



---

[7] *iWalk Portable Charger for iPhone*, Amazon.com, https://a.co/d/fjvI8sQ (accessed Jan. 28, 2026).

23.     In every one of these sales, Amazon undertakes responsibility for the consumer-facing portion of each transaction through its Fulfillment by Amazon ("FBA") program. With FBA, sellers ship their products to Amazon warehouses, which are termed "fulfillment centers." There, Amazon stores the inventory, packs and ships orders, and handles customer service and returns on behalf of the seller for a per-unit fee.[8]

24.     Amazon also undertakes an active role in the recall process if there is a product defect. When a product listed on Amazon is recalled, Amazon's Recall Logistics Service manages customer communications and automatically refunds consumers unless sellers opt out within 24 hours. Amazon also recommends that sellers allow Amazon to provide feedback on their Corrective Action Plans before they are submitted to regulators. Finally, Amazon actively monitors sellers' engagement with regulatory authorities by requiring bi-weekly proof of regulatory engagement.

25.     Through these initiatives, Amazon swallows virtually every product-related consumer interaction. From the perspective of the consumer, Amazon acts like a traditional retailer. The typical consumer enters Amazon's digital storefront, browses products on Amazon's virtual shelves, purchases a product through Amazon's payment interface, and is shipped the product in Amazon packaging from an Amazon warehouse with an Amazon vehicle driven by an Amazon employee, sometimes to an Amazon-specific locker. If the consumer is not satisfied, they may return the product to Amazon via an Amazon drop-off point. If there is a recall, Amazon will notify the consumer directly and typically handle the refund process without contact from the

---

[8]   *Amazon FBA: Fulfillment services for your ecommerce business*, AMAZON.COM, https://sell.amazon.com/fulfillment-by-amazon (accessed Jan. 30, 2026).

**Page 9 of 28**

manufacturer. To the consumer, the seller is all but invisible. As far as most consumers are concerned, "I got it from Amazon" tells the whole story.

26.     This insulated shopping experience is no coincidence. Amazon benefits directly from suppressing the visibility of Chinese sellers in its marketplace amid general U.S. consumer distrust of Chinese goods. A 2020 Deutsche Bank survey found that 41% of Americans surveyed would not buy products made in China.[9] However, by some estimates, over 70% of the products sold on Amazon.com are made in China.[10] Stamping the Amazon brand over these products grants them validity in consumers' minds because of the trust Amazon's brand garners. Americans, likely even those who claim to be averse to Chinese goods, will buy these products if they come from Amazon because Amazon broadcasts to consumers nationwide that it undertakes to keep consumers safe from defective, dangerous, and inauthentic products on its site.

27.     Amazon loudly advertises that it rigorously vets sellers and products to ensure consumer safety. It states:

> Amazon strives to be Earth's most customer-centric company, where people can find and discover the widest possible selection of safe and authentic goods, and we work hard to earn and maintain your trust. In 2018 alone, we invested over $400 million to protect our store and our customers and built robust programs to ensure products offered are safe, compliant, and authentic.[11]

---

[9] *41% of Americans Say They Won't Buy Products Made in China, While 35% of Chinese Say They Won't Buy American-Made Goods*, NEWSWEEK, https://www.newsweek.com/41-americans-say-they-wont-buy-products-made-china-while-35-chinese-say-they-wont-buy-1504503 (accessed Jan. 30, 2026).

[10] *Made in China, Sold on Amazon*, STATISTICA.COM, https://www.statista.com/chart/33376/share-of-items-sold-on-amazon-by-country-of-origin/?srsltid=AfmBOoqVrZcvdiVPMXocmPA86P5QlYqYSpbSVLrnXtX-fGgCcvOCvzJH (accessed Jan. 30, 2026).

[11] *Product safety and compliance in our store*, AMAZON NEWS, https://www.aboutamazon.com/news/company-news/product-safety-and-compliance-in-our-store (accessed Jan. 30, 2026).

**Page 10 of 28**

28.    The language Amazon uses is unequivocal. Amazon emphasizes that it has sophisticated tools at each level to "***prevent*** suspicious, unsafe, or non-compliant products from being listed in [its] store."[12] Amazon advertises the following systems, which it claims "are ***far more effective than other online and offline retailers***":

a. Seller vetting procedures using "a number of verifications and [. . .] proprietary machine learning technology that stops bad actors before they can register or list a single product in our store[;]"

b. "[A] dedicated global team of compliance specialists that review submitted safety documentation[;]"

c. Amazon-mandated "additional qualification requirements that sellers must meet to offer products[;]"

d. Automated machine learning tools that "continuously scan our product listings and updates to find products that might present a concern[,]" which, "every few minutes, [. . .] review the hundreds of millions of products, scan the more than five billion attempted daily changes to product detail pages, and analyze the tens of millions of customer reviews that are submitted weekly for signs of a concern and investigate accordingly[;]"

e. Multiple channels of reporting from "regulatory agencies, industry organizations, brands, customers, and customer service teams[;]"

f. Investigations into products that can be triggered "instantly" by a customer service associate;

g. Alert systems to "notify customers who purchased a particular product online and alert them to a potential safety issue[;]" and

h. Direct relationships with "agencies including the Food and Drug Administration and Consumer Product Safety Commission" focused on "developing new solutions and guidelines that will benefit all retailers and consumers."[13]

---

[12] *Id.* (emphasis added).
[13] *Id.* (emphasis added).

29.    Through promises such as these, Amazon represents and undertakes that its "teams and technology ***detect and prevent product safety risks***"[14] for consumers.

30.    Amazon has also undertaken to manage recall efforts "in the unlikely case of a recall," notifying consumers with "a personalized email with details about the recall[,]" providing instructions, and issuing refunds unless the seller quickly opts out.[15]

31.    Amazon guarantees: "customers can shop confidently knowing we stand behind all products in our store and will make it right in the rare event a product does not meet expectations."[16]

32.    On its site, Amazon frequently responds to and strikes negative reviews by customers dissatisfied with defective and dangerous products, stating: "This item was fulfilled by Amazon, and we take responsibility for this fulfillment experience." "Fulfillment experience," however, spans issues from being sent a used and damaged product to the fact that a product is dangerously defective and must be discarded.[17]

---

[14] *Preventing Unsafe Products in Our Store*, ABOUTAMAZON.COM, https://trustworthyshopping.aboutamazon.com/focus/product-safety (accessed Jan. 30, 2026).
[15] *Product safety alerts, recalls, stop sales, and market withdrawal policy for sellers*, AMAZON SELLER CENTRAL, https://sellercentral.amazon.com/help/hub/reference/external/GRD4EMBNNW3P47GH?locale=en-US (accessed Jan. 30, 2026); *Amazon creates new page to share recalls and product safety alerts for customers within their accounts*, AMAZON NEWS, https://www.aboutamazon.com/news/how-amazon-works/amazon-creates-new-page-to-share-recalls-for-customers (accessed Jan. 30, 2026).
[16] *Amazon creates new page to share recalls and product safety alerts for customers within their accounts*, AMAZON NEWS, https://www.aboutamazon.com/news/how-amazon-works/amazon-creates-new-page-to-share-recalls-for-customers (accessed Jan. 30, 2026).
[17] *iWalk Direct*, AMAZON.COM, https://www.amazon.com/sp?ie=UTF8&seller=A34396LJ686LPF&asin=B0FH9XR1HW&ref_=dp_merchant_link&isAmazonFulfilled=1 (accessed Jan. 30, 2026).

**Page 12 of 28**



33.    From these representations, consumers shop under the impression that Amazon can effectively prevent defective and dangerous products from being listed on its site and that its automated tools would automatically de-list products causing credible reports of safety issues. Amazon does not mince words in broadcasting that it stands behind "all products" it lists and that where there is a defect, Amazon will take responsibility.

34.    Amazon's efforts to project that it employs foolproof safety measures have led to an outsized level of consumer trust compared to other prominent online marketplaces selling

**Page 13 of 28**

predominantly Chinese goods such as Temu. For example, a 2025 study found that while 77% of the surveyed Amazon products had similar counterparts on Temu, with every 10th item being identical, only 5% of survey respondents said they trusted Temu compared to 87% of survey respondents who expressed trust in Amazon.[18] These statistics demonstrate that consumers trust Amazon to vet and filter out misleading or dangerous foreign products. Unlike Amazon, on Temu, consumers expect to find dubious products like gummies promising a sun-free suntan and "AI translation glasses" for under ten dollars.[19]



---

[18] *Do people trust Temu or Amazon? What shoppers are choosing amid Trump tariffs.*, USA TODAY, https://www.usatoday.com/story/money/2025/02/18/do-consumers-prefer-amazon-temu/78542986007/ (accessed Jan. 30, 2026); *Temu vs. Amazon: Price, trust, and competition*, OMNISEND, https://www.omnisend.com/temu-vs-amazon-price-trust-report/ (accessed Jan. 30, 2026).

[19] *Tanning Gummies*, TEMU.COM, https://share.temu.com/nPRbtIqs9FC (accessed Feb. 2, 2026); *OICIIDO AI Smart Glasses*, TEMU.COM, https://share.temu.com/QEqVe24lnDC (accessed Feb. 2, 2026).



35.      Amazon promises to filter out such products, leaving its site with only those that are "safe, compliant, and authentic."[20] Amazon, however, does not live up to this promise. Despite its extended product safety marketing campaign to engender trust, Amazon.com is full of the same or similar Chinese products, often rebranded and sold at a comparative premium.[21]

---

[20] *Product safety and compliance in our store*, AMAZON.COM, https://www.aboutamazon.com/news/company-news/product-safety-and-compliance-in-our-store (accessed Jan 30, 2026).
[21] *Tanning Gummies*, AMAZON.COM, https://a.co/d/fmg1jPV (accessed Feb. 2, 2026); *Ai Translation Smart Glasses with ChatGPT*, AMAZON.COM, https://a.co/d/6qBnflm (accessed Feb. 2, 2026).



36.     Amazon sells a myriad of foreign products on its site, convincing its customers that they are authentic and safe because of the internal safeguards it undertakes to maintain. Consumers are exposed to foreign products they would never otherwise see or consider purchasing but for Amazon's undertaking. Consumers trust Amazon's safeguards to filter out dangerous products in purchasing foreign and unfamiliar goods on its site. Amazon is responsible for fulfilling its undertaking to keep consumers safe when there is a credible report of an unsafe product on its site.

When Amazon's safeguards fail and customers are exposed to dangerous products, consumers get injured because of Amazon's promises.

### C. The Incident

37.     On the evening of April 22, 2025, in Laredo, Texas, Mr. and Mrs. Chavez were driving to dinner with their eight-year-old daughter and A.C., ten years old, in the back seat. A.C., who had just been picked up from their dance class, went to charge their iPhone with the Subject Device.

38.     From the front seat, Mr. and Mrs. Chavez heard a sharp popping sound behind them as the Subject Device malfunctioned and suddenly exploded into flames in A.C.'s hands. Crying out, A.C. threw the flaming Power Bank onto the floor of the vehicle, which also caught fire. Mr. Chavez quickly removed the children from the vehicle and put out the fire. He then rushed A.C. to the emergency room for treatment.

39.     The explosion and resulting fire caused A.C. to suffer extensive, severe burns to the face, neck, torso, arms, and legs. These burns were devastating to A.C. and their family, causing permanent physical damage and mental trauma.

### D. Defendants' Liability

40.     iWalk Defendants were responsible for manufacturing and distributing the Subject Device. As such, the iWalk Defendants are strictly liable for injuries caused by defects in their products.

41.     Amazon undertook to protect A.C. from defective and dangerous products on its website such as the Subject Device.

42.     But for Amazon, A.C. and their family would never have been introduced to or considered the purchase of the Subject Device. A.C. and their family relied on Amazon's

**Page 17 of 28**

reputation and promises of rigorous product safety monitoring and enforcement efforts in deciding to purchase the Subject Device.

43.    Amazon was deficient in performing its undertaking, selling an unvetted and dangerous foreign product on its site and failing to remove it even after credible reports of a serious defect arose well in advance of the incident involving A.C. Despite Amazon's promises of automated tools and instant investigations that keep dangerous products from ever being listed, Amazon did not take action regarding the Subject Device until it was too late.

44.    There are multiple recorded incidents of iWalk chargers igniting and causing property damage and injury prior to this incident. For example, on February 2, 2024, a woman posted a video on TikTok reporting that an iWalk charger had caught fire and burned a hole in her chair near where the battery was charging. The video displays pictures of a burned and melted iWalk Power Bank and records the damage to the surrounding area of the woman's home.[22]

---

[22] *Iwalk experience*, TIKTOK, https://www.tiktok.com/@ptsdprogrammer/video/7339315559810551083 (accessed Feb. 2, 2026).



45.    Similarly, on September 16, 2024, a Massachusetts news outlet reported on a magnetic wireless Power Bank purchased on Amazon.com that exploded and ignited a teenager's mattress and clothing. The broadcast depicted the Amazon listing, which blurred the brand name, but depicts a title and naming convention identical to that of iWalk and a "circular LED display screen on the front to reflect the remaining power of the power bank" as identified in the CPSC recall of defective iWalk models.[23]

_____

[23] *Massachusetts teen injured after phone charger explodes, sparks house fire*, WCVB, https://www.wcvb.com/article/topsfield-teen-injured-phone-charger-explodes/62233176, (accessed Feb. 2, 2026).



46.     Upon information and belief, Amazon received reviews of the Subject Device and similar recalled models prior to the incident involving A.C. stating that the Power Bank overheated, was dangerous, and/or caused injury or property damage.

47.     Amazon has now removed the Subject Device listing from its site, making its reviews inaccessible to the public. However, Amazon customers posted reviews warning Amazon and its customers of dangerous defects in similar iWalk products far before A.C.'s incident.

48.     For example, an Amazon user posted a review of a substantially similar iWalk mag-safe Power Bank on September 10, 2024, warning consumers and Amazon that the product exploded.[24] The review included a picture of the charred and melted product. Five Amazon users marked the review as "helpful," which boosts the visibility and priority of the review.[25]

---

[24] *iWalk Magnetic Portable Charger for iPhone, 10,000mAh Wireless Power Bank with Stand*, AMAZON.COM, https://www.amazon.com/product-reviews/B0CS2QY8KP/ref=cm_cr_getr_d_paging_btm_next_3?ie=UTF8&reviewerType=all_reviews&pageNumber=3 (accessed Feb. 5, 2026).

[25] *Update on customer reviews*, AMAZON NEWS, https://www.aboutamazon.com/news/innovation-at-amazon/update-on-customer-reviews (accessed Feb. 5, 2026) (stating that amazon's machine learning algorithm gives more weight to "more helpful reviews.").

**Page 20 of 28**



**iWALK Magnetic Portable Charger for iPhone, 10,000mAh Wireless Power Bank with Stand, 15W MagSafe Fast Charging and USB-C PD 20W Charging for iPhone16/15/14/13/12 Series/Airpod**

Visit the iWALK Store

4.1 ★★★★☆ ∨ (78)  |  Search this page

**Currently unavailable.**
We don't know when or if this item will be back in stock.

| | |
|---|---|
| Connector Type | USB Type C |
| Brand | IWALK |
| Battery Capacity | 10000 Milliamp Hours |
| Color | Pink |
| Special Feature | Auto Shut-Off, Digital Display, Fast Charging, Pocket Size, Wireless Charging |

**About this item**

- 15W Max Magnetic Phone Charger: Delivers 7.5W, 10W, and 15W fast wireless charging. Snap it on and start charging instantly, powering the iPhone 16 to 50% in just 60 minutes.
- 10,000mAh Capacity: Compact yet powerful, the MXB009 magnetic magsafe power bank can charge an iPhone 13 twice, an iPhone 14 Pro twice, and an iPhone 15 Pro Max 1.5 times, meeting most of your needs.
- Compatible Models: Specifically designed for the iPhone series, including iPhone 16/15/14/13/12 series, as well as AirPods.



Hannah Lee

★☆☆☆☆

**A portable battery blew up.**

Reviewed in the United States on September 10, 2024



A portable battery blew up. By the grace of God, I'm glad I caught it in time before anything worse could have happened.
I can't imagine what could have happened if I hadn't.

5 people found this helpful



Helpful      ⬆ Share                    Report

49.    CPSC issued a recall of 27,000 units of the Subject Device and similar models on May 29, 2025. From when the Power Bank models were first sold in July 2021, there were reports

of at least 15 of the Power Banks catching fire, causing at least 10 burn injuries.[26] Upon information and belief, multiple of these reports occurred before A.C.'s incident.

50.    These incidents, reports, and reviews were more than sufficient to put Amazon on notice through its extensive and sophisticated product safety systems.

51.    As a direct and proximate result of Defendants' acts and omissions, A.C. suffered excruciating pain, scarring and disfigurement, medical expenses, mental anguish, and physical impairment, all of which continue.

## VI.    CAUSES OF ACTION

### Count 1: Strict Products Liability – iWalk Defendants

52.    Plaintiff realleges and incorporates each and every allegation and fact contained in this pleading as though set forth fully herein.

53.    iWalk Defendants had a duty to design, manufacture, test, market, advertise, label, distribute, and sell their Power Banks so that they are reasonably safe for foreseeable use.

54.    At the time the Subject Device was sold and left the possession of iWalk Defendants, it contained one or more conditions which rendered it defective and unreasonably dangerous in light of its nature and intended use.

55.    At all times, the Subject Device was used in the manner intended, recommended, or reasonably foreseeable by iWalk Defendants. No other reasonable secondary cause contributed to Plaintiff's injuries and damages other than the use of the Subject Device.

56.    The Subject Device iWalk Defendants manufactured and/or supplied was defective

---

[26] *iWALK Magnetic Wireless Power Banks Recalled Due to Fire and Burn Hazards; Manufactured by U2O Global*, UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2025/iWALK-Magnetic-Wireless-Power-Banks-Recalled-Due-to-Fire-and-Burn-Hazards-Manufactured-by-U2O-Global, (accessed Jan. 30, 2026).

in design, manufacture, and/or warning in that when it left the hands of iWalk Defendants, the foreseeable risks exceeded the benefits associated with the design and/or formulation of this product.

57.    The Subject Device iWalk Defendants designed, manufactured, marketed, sold, and supplied, and Plaintiff and their family purchased and used was defective in its design, manufacture, and labeling in that iWalk Defendants knew or should have known of the dangers and risks of the Subject Device overheating, combusting, and exploding but failed to adequately warn or instruct users like Plaintiff and their family on the nature and extent of those risks.

58.    The Subject Device iWalk Defendants designed, manufactured, and/or supplied was defective in design in that it was more dangerous than an ordinary consumer would expect when used in its intended or reasonably foreseeable manner. Specifically, the Subject Device had poorly designed lithium-ion battery cell and related components including but not limited to the battery management system, charging control unit, internal wiring and soldering, enclosure and mechanical design, and/or thermal management systems (or lack thereof) that created an unreasonable risk of harm that was unknown and could not have been known by users like Plaintiff.

59.    Safer alternative designs for Power Banks are readily available and are widely marketed and sold on Amazon.com. Other brands of Power Banks do not short circuit, combust, or explode at the rates of the Subject Device and similar models.

60.    Such alternative designs would have significantly reduced the risk of harm to Plaintiff while not impeding the Power Bank's utility. This is evidenced by multiple Amazon reviews claiming that iWalk Power Banks are subpar compared to market alternatives.

61.    Alternative designs were also economically and technically feasible given their widespread sale.

62.     The Subject Device iWalk Defendants designed, manufactured, and/or distributed was also defective in that iWalk Defendants failed to adequately test this product before placing it into the stream of commerce.

63.     As a direct and proximate result of the Subject Device's defects, Plaintiff suffered injuries and damages as described below.

**Count 2: Negligence – iWalk Defendants**

64.     Plaintiff realleges and incorporates each and every allegation and fact contained in this pleading as though set forth fully herein.

65.     iWalk Defendants had a duty to exercise reasonable care in the design, manufacture, testing, sale, labeling, and/or distribution of the Subject Device it placed into the stream of commerce, including a duty to assure that the product did not cause unreasonable or unnecessary injury.

66.     iWalk Defendants breached their duty of care to Plaintiff through their negligent acts and omissions. iWalk Defendants did not exercise reasonable care in the warning, design, manufacture, sale, testing, labeling, and/or distribution into the stream of commerce of the Subject Device in that iWalk Defendants knew or should have known that the Subject Device could cause serious injuries.

67.     iWalk Defendants were negligent in the design, manufacture, sale, testing, and/or distribution of the Subject Device in that it:

    a. Failed to use due care in designing, formulating, developing, testing, and manufacturing the Subject Device so as to avoid against the described risks to consumers who used the Subject Device;

    b. Placed an unsafe product into the stream of commerce; and

    c. Failed to discover or warn of the dangers associated with the use of the Subject Device despite having actual and/or constructive knowledge of such dangers.

68.     iWalk Defendants knew or should have known that Plaintiff and other users could foreseeably suffer injuries as a result of iWalk Defendants' failure to exercise ordinary care as described above.

69.     As a direct and proximate result of iWalk Defendants' negligence, Plaintiff suffered injuries and damages as described below.

## Count 3: Breach of Implied Warranty – iWalk Defendants

70.     Plaintiff realleges and incorporates each and every allegation and fact contained in this pleading as though set forth fully herein.

71.     iWalk Defendants were merchant sellers of the Subject Device.

72.     In order to induce the purchase and/or use of the Subject Device, iWalk Defendants impliedly warranted to potential users of the Subject Device that it was safely designed, tested, and manufactured and was safe for the uses for which it was designed and/or advertised to be used.

73.     iWalk Defendants breached this warranty in that the Subject Device was not safe for the uses for which it was manufactured and/or advertised.

74.     Plaintiff was injured as a result of detrimental reliance upon iWalk Defendants' implied warranties.

75.     As a direct and proximate result of one or more of the foregoing breaches of implied warranty, Plaintiff suffered injuries and damages as described below.

## Count 4: Negligent Undertaking – Amazon

76.     Plaintiff realleges and incorporates each and every allegation and fact contained in this pleading as though set forth fully herein.

77.     Amazon affirmatively undertook to provide safety-related services to users who purchased products through Amazon's website, including Plaintiff.

78.     As a result, Amazon owed Plaintiff a duty to exercise reasonable care in the performance of those safety-related services and also owed Plaintiff a duty to use the same degree of care that a reasonably careful person would use to avoid harm to others under similar circumstances.

79.     Plaintiff relied upon that performance by Amazon, and that performance increased Plaintiff's risk of harm.

80.     Although Amazon knew or should have known its services were necessary for Plaintiff's protection, it failed to exercise reasonable care in performing those services, thereby violating the above duties.

81.     As a direct and proximate result, Plaintiff was damaged as set forth below.

## VII.    COMPENSATORY DAMAGES

82.     Plaintiff realleges and incorporates each and every allegation and fact contained in this pleading as though set forth fully herein.

83.     As a direct and proximate result of the incident underlying this lawsuit, Plaintiff suffered and will in all reasonable probability continue to suffer the following actual damages:

a.    Medical treatment paid or incurred in the past;

b.    Medical treatment which will be necessary in the future;

c.    Past and future pain and suffering;

d.    Past and future mental anguish;

e.    Physical disfigurement;

f.    Past and future impairment;

g.    Property damage, including costs to repair or replace damaged items;

h.    Pre- and post-judgment interest as allowed by law; and

i.   All other relief to which Plaintiff is entitled at law or in equity.

## VIII.   EXEMPLARY DAMAGES

84.   Plaintiff realleges and incorporates each and every allegation and fact contained in this pleading as though set forth fully herein.

85.   In addition to actual damages, Defendants' conduct as described herein constitutes gross negligence in that it demonstrated an entire want of care that tends to show conscious indifference to the welfare of others, including that of Plaintiff.

86.   Defendants created an extreme risk of harm by violating safety rules, knowing that such action and/or inaction, in all probability, could lead to potential harm to others at or around the time of the incident described above.

87.   Defendants had both actual and/or constructive knowledge of the extreme risk of harm this presented. Defendants' acts and/or omissions, taken singularly or in combination, constitute acts of gross negligence which proximately caused Plaintiff's injuries as described herein.

## IX.   JURY DEMAND

88.   Plaintiff hereby makes a request for a jury in accordance with the Federal Rules of Civil Procedure.

## X.   PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully requests that Defendants be cited to appear and answer, and on final trial, that Plaintiff have judgment against each Defendant for:

a.   All of Plaintiff's actual damages, both general and special as described above;

b.   Pre-judgment and post-judgment interest at the legal rate to the extent allowed under the

law until paid; and

c.  All other just and lawful relief in law and in equity, general and specific, to which Plaintiff may be duly and justly entitled.

Respectfully submitted,

By: _____

Andrew G. Pate
ATTORNEY-IN-CHARGE
State Bar No. 24079111
S.D. Tex. Bar No. 3957553
dpate@nixlaw.com
Christian Green
State Bar No. 24136871
S.D. Tex. Bar No. 3919429
cgreen@nixlaw.com
**NIX PATTERSON, LLP**
8701 Bee Cave Road
Building 1, Suite 500
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335


MICHAEL M. GUERRA
*OF COUNSEL*
**NIX PATTERSON, LLP**
State Bar No. 00787603
S.D. Tex. Bar No. 18850
P.O Box 5371
McAllen, TX 78502
Telephone: 956.682.5999
Facsimile: 888.317.8802
E-Filing Email: everyone@mmguerra.com
**COUNSEL FOR PLAINTIFF**